IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SANDRA K. SMIGGS

                        Plaintiff,

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                      Defendant.

                        No. CV-10-948-HZ

                        OPINION AND ORDER

David B. Lowry
ATTORNEY AT LAW
9900 SW Greenburg Road
Columbia Business Center
Suite 130
Portland, OR 97223

       Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE

1 - OPINION AND ORDER

District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Richard A. Morris
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900
M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff, Sandra K. Smiggs ("Plaintiff" or "Smiggs"), brings this action pursuant to the

Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of Social Security (the "Commissioner").  The Commissioner found

Plaintiff not disabled and denied her applications for Title II Disability Insurance Benefits

("DIB"), 42 U.S.C. §§ 401-34.  For the reasons set forth below, the Commissioner's decision is

REVERSED and REMANDED for the immediate calculation and award of benefits.

## PROCEDURAL BACKGROUND

      On February 13, 2006, Plaintiff filed for Title II DIB, alleging a disability onset date of

September 1, 2004.  R. at 97.  Plaintiff's applications were denied, and she requested a hearing

before an administrative law judge ("ALJ") of the Social Security Administration ("SSA").  R. at

74, 78-79.  A hearing was held on June 9, 2009, before ALJ Riley J. Atkins, who found Plaintiff

not disabled.  R. at 20.  Plaintiff requested review of the ALJ's decision, but the Appeals Council

denied Plaintiff's request on September 29, 2009.  R. at 4.

/ / /

2 - OPINION AND ORDER

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence of the record. Therefore, the evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

3 - OPINION AND ORDER

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e).  If so, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 1, 2004, her alleged disability onset date.  R. at 11, Finding 2.  At step two, the ALJ found Plaintiff had the "following severe impairments: fibromyalgia, bi-polar disorder, social phobia." Id., Finding 3.  At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 16-18, Finding 4.

At step four, the ALJ found Plaintiff was not able to perform past relevant work.  R. at 18, Finding 6.  At step five, the ALJ found Plaintiff was not disabled because she could perform the occupations of: (1) small products assembler; (2) cafeteria attendant; and (3) paper sorter.  R. at 19, Finding 10.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879

F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability.  Howard, 782 F.2d at 1486.  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

## DISCUSSION

Plaintiff contends the ALJ erred by: (1) rejecting her testimony; (2) rejecting the statements of lay witnesses; (3) discounting the medical opinion of Pamela Miller, Ph.D; (4) not following Social Security Ruling ("SSR") 96-8p when determining Plaintiff's RFC; and (5) accepting the testimony of the vocational expert ("VE") regarding the number of jobs at the national and regional levels.

I address each argument in turn.

/ / /

/ / /

5 - OPINION AND ORDER

**I. Plaintiff's Credibility**

Plaintiff argues the ALJ did not provide clear and convincing reasons to reject her testimony. The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2005).

Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not credible to the extent they [were]

6 - OPINION AND ORDER

inconsistent with [her RFC]."  R. at 14.  In support of his credibility determination, the ALJ

concluded that: (1) Plaintiff was not subject to any "fibromyalgia trigger-point testing," Id.; (2)

although Plaintiff testified she had ankylosing spondylitis, no doctor had diagnosed Plaintiff with

such a disorder, Id.; (3) Plaintiff periodically failed to follow the recommendations of her treating

doctors, R. at 15; (4) Plaintiff's job history supported a finding that her panic attacks were not

severe enough to prevent her from working, R. at 16; and (5) medical notes in the record called

into question Plaintiff's sincerity regarding her desire to work.  R. at 17.  Because the ALJ made

no affirmative finding of malingering and because the record contains objective evidence of

impairments that could reasonably be found to cause the symptoms alleged by Plaintiff, the ALJ

was required to provide clear and convincing reasons to reject Plaintiff's complaints.

Lingenfelter, 504 F.3d at 1036.

        In his opinion, the ALJ concluded Plaintiff was not credible because she made

inconsistent statements during her testimony on June 9, 2009, regarding her diagnosis of

ankylosing spondylitis.  R. at 14.  Specifically, he found that although Plaintiff "testified . . . she

ha[d] ankylosing spondylitis . . . , no such diagnosis ha[d] been made" by Plaintiff's doctors.  Id.

        "Credibility determinations do bear on evaluations of medical evidence when an ALJ is

presented with conflicting medical opinions or inconsistency between a claimant's subjective

complaints and his diagnosed conditions."  Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005)

(citation omitted).  In this instance, the record shows that Plaintiff testified on June 9, 2009, that

she had been diagnosed with ankylosing spondylitis in 2008.  R. at 29.  No doctor in the record,

however, made any such diagnosis.  To the contrary, Dr. Sager concluded on March 5, 2009, that

he had "not been able to identify an objective pathology of [Plaintiff's] muscle or neuromuscular

junction." R. at 275. He also opined ankylosing spondylitis could not "adequately explain many of [Plaintiff's] problems" and found "it was difficult to correlate [Plaintiff's] current symptoms with ankylosing spondylitis." R. at 275-76, 281. Based on the record before me, the ALJ's finding was not in error.

The ALJ also found that Plaintiff "periodically failed to follow recommendations made by the treating doctors . . . suggest[ing] either that [Plaintiff's] symptoms may not have been as serious as has been alleged or that [Plaintiff was] at least partially responsible for causing her symptoms." R. at 15. "[An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p at *7; Smolen, 80 F.3d at 1284 ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider . . . "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . .").

Here, Janice Monroe ("Nurse Monroe"), a family nurse practitioner, documented on July 11, 2006, that Plaintiff had not "been . . . taking her Paxil very well," and had stated that "she just gets tired of taking medicine."[1] R. at 261. Additionally, Pat Cason, M.D., one of Plaintiff's treating physicians, noted on July 24, 2006, that Plaintiff had "stopped PAXIL . . ., had tapered it somewhat and then stopped it entirely about two weeks ago!" R. at 15, 268, 270. Plaintiff asserts that her noncompliance with her prescribed treatment are characteristic of her bipolar

---

[1] Plaintiff takes Paxil for depression and anxiety. See R. at 142.

disorder.  Plaintiff, however, fails to cite any evidence in the record, and I find none, supporting

her proposition.  The ALJ's finding was proper.

Finally, the ALJ found that "Dr. Cason . . . recorded a 10 month gap in [Plaintiff's]

treatment."  R. at 15, 278.  Plaintiff does not specifically contest this finding or explain the gap in

her medical treatment history.  "When a claimant does not seek treatment for months after the

alleged onset of a disabling condition, the ALJ may draw an adverse inference as to [his]

credibility.  Such an unexplained failure to seek treatment may cast doubt on the sincerity of a

claimant's disability claim."  Lubin v. Astrue, No. CV–09–1043–AA, 2011 WL 1261304, at *3

(D. Or. 2011) (internal quotation marks and citations omitted); see also Orn v. Astrue, 495 F.3d

625, 638 (9th Cir. 2007) (unexplained gaps in claimant's medical treatment may be a basis for an

adverse credibility finding).

In sum, I find that the ALJ's reason for discrediting Plaintiff's symptom testimony are

clear and convincing and supported by substantial evidence.  See, e.g., Batson v. Comm'r of Soc.

Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (the ALJ's ultimate credibility finding may be

upheld even if less than all of the ALJ's reasons for rejecting the claimant's testimony may not be

upheld).

## II. Lay Witness Testimony

Plaintiff argues the ALJ erred when finding the lay witness statements by Plaintiff's two

daughters and pastor of "limited value."  R. at 18.  Lay witness evidence as to a claimant's

symptoms "is competent evidence that an ALJ must take into account" unless he "expressly

determines to disregard such testimony and gives reasons germane to each witness for doing so."

Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The reasons "germane to each witness" must be specific. E.g., Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006).

　　　Here, the ALJ ignored a Work Activity Questionnaire ("Questionnaire") completed on April 5, 2006, by Plaintiff's former employer at Columbia Gorge Center, where Plaintiff worked as a store clerk. See R. at 123. In the Questionnaire, Plaintiff's former employer rated Plaintiff as being only 70% as productive as other employees. R. at 124. The ALJ's failure to specifically address the limitations set forth in the Questionnaire was legal error. See Lewis, 236 F.3d at 511.

　　　In addition, the ALJ found the observations of Robert Reasoner ("Reasoner"), Plaintiff's pastor, and Plaintiff's daughters, Sara and Alexis Garrelts, were "generally credible" and "generally consistent" with Plaintiff's testimony. R. at 18. He, however, found their statements "of limited value for arriving at a determination of [Plaintiff's] overall residual functional capacity" because "they lack[ed] the medical and vocational knowledge necessary to provide an objective critical assessment on how the claimant's impairments affect her overall abilities to perform basic work activities at various levels." Id. It is error to disregard lay witness testimony on the basis that the lay witnesses have no medical or vocational training. Bruce v. Astrue, 557 F.3d 1113, 1115-16 (9th Cir. 2009) (concluding that a lay person, though not a vocational or medical expert, is not disqualified from rendering an opinion as to how the claimant's condition affects his ability to perform basic work activities).

　　　The Commissioner now contends that the lay witness statements did not provide significant or probative evidence because they were similar to the claimant's complaints, which the ALJ properly rejected. However, this was not a reason provided by the ALJ. A court reviews the adequacy of the reasons specified by the ALJ, not the post hoc rationalizations by the

Commissioner.  See, e.g., Bunnell, 947 F.2d at 345-46; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (court is constrained to review the reasons the ALJ asserts).

When an ALJ fails to properly consider or discount competent lay witness testimony that is favorable to the claimant, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." E.g., Stout, 454 F.3d at 1056.  Here, the Questionnaire specifically stated Plaintiff's productivity was well below those of other employees.  R. at 124.  Additionally, Reasoner, who has known Plaintiff for six years, stated that on "many days [Plaintiff] is not physically able to get out of bed."  R. at 145.  He also stated that "during days of high levels of tremors, anxiety, and muscle fatigue[, Plaintiff] doesn't go out" and "shuts down regularly" from anxiety.  R. at 148, 151.  He further stated that when Plaintiff "is having anxiety attacks and tremors, she requires assistance" and that although Plaintiff "attempts" to do house or yard work, on "some days she is successful [and] on other days [she is] not."  R. at 147-48.  He also stated that "[m]ost [of Plaintiff's] social activities have ceased . . . [and although she] used to be a youth leader for both church and community[,] she is no longer able to do [it]."  R. at 150.

Sara Garrelts, Plaintiff's fifteen-year-old daughter, testified on June 9, 2009, that Plaintiff "wobbles and has trouble steadying herself when getting up and . . . walking from place to place," has trouble grasping, has to rest every ten to fifteen minutes when doing "household things like picking up something or doing the dishes," and has panic attacks for an hour at a time.  R. at 53-54, 57.  She also testified that her mother does things "half as fast as other people."  R. at 55.

Alexis Garrelts, Plaintiff's eighteen-year-old daughter, testified that Plaintiff has panic

attacks every two to three days which last from one to three hours.  R. at 59.  She further testified

that her mother is "[n]ot very functional" during her panic attacks.  R. at 58-59.

The ALJ's failure to properly address the lay witness statements constitutes legal error.

See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (finding the ALJ committed

reversible error when he failed to provide adequate reasons for rejecting the opinion of an

examining physician); see also Stout, 454 F.3d at 1056.  They clearly describe significant

limitations experienced by Plaintiff, including her low productivity, lack of functionality during

panic attacks, her inability to go out because of tremors, anxiety, and muscle fatigue, and her

need to rest every ten to fifteen minutes.  Based on the record before me, I cannot confidently

conclude that no reasonable ALJ, when fully crediting the lay witness statements, could have

reached a different disability determination.  See Stout, 454 F.3d at 1055.  Thus, the ALJ's error

in assigning only "limited value" to the lay witness statements was not harmless error.

### III. The Opinion of Dr. Pamela Miller, Ph.D.

Plaintiff argues the ALJ failed to provide at least "specific and legitimate" reasons when

assigning only "some weight" to the opinion of Dr. Miller, a licensed clinical psychologist.  R. at

238.  The weight given to the opinion of a physician depends on whether it is from a treating

physician, an examining physician, or a nonexamining physician.  See, e.g,. Lester v. Chater,

81 F.3d 821, 830 (9th Cir. 1995).  More weight is given to the opinion of a treating physician

who has a greater opportunity to know and observe the patient as an individual.  See, e.g.,

Smolen, 80 F.3d at 1285 ("Because treating physicians are employed to cure and thus have a

greater opportunity to know and observe the patient as an individual, their opinions are given

greater weight than the opinions of other physicians.") (Citations omitted).  If a treating or

examining physician's opinion is not contradicted by another physician, the ALJ may only reject

it for clear and convincing reasons.  Id.; Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir.

2006).  Even if the opinion is contradicted by another physician, the ALJ may not reject it

without providing specific and legitimate reasons supported by substantial evidence in the record.

 E.g., Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Widmark, 454 F.3d at 1066.  The

opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence

to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.

However, it may serve as substantial evidence when it is supported by and consistent with other

evidence in the record.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

1999).

        Here, on June 29, 2006, Plaintiff was referred to Dr. Miller by the Oregon Disability

Determination Services ("DDS") for a psychological diagnostic examination.  R. at 238.  Dr.

Miller performed a mental status exam, conducted a structured clinical interview, and reviewed

Plaintiff's records.  Id.  Dr. Miller observed Plaintiff had an "agitated and labile" affect and noted

Plaintiff had "serious symptoms of paranoia and difficulty interacting with others."  R. at 240.

She also documented in her medical notes that Plaintiff "has a longstanding problem in accepting

feedback from supervisors and cooperating with coworkers."  R. at 239.  Based on the

psychological diagnostic exam, Dr. Miller assigned Plaintiff with a Global Assessment of

Functioning ("GAF") score of 46[2] and ultimately diagnosed Plaintiff with bipolar disorder and

---

        [2] The GAF is a scale from 1-100, in ten point increments, used by clinicians to determine
the individual's current overall functioning.  See Am. Psychiatric Ass'n, Diagnostic and
Statistical Manual of Mental Disorders ("DSM-IV"), p. 34 (4th ed. 2000).  A GAF between 41-
50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent
                                                                    (continued...)

social phobia, "traits cluster B personality disorder," "moderate to severe" social isolation,

financial stress, and "worsening limitations."  R. at 241.

 The ALJ, however, assigned Dr. Miller's medical opinion less than full weight because

"[a] GAF score is merely a 'snapshot' of the person's condition as of that day, and . . . cannot

show if an individual's condition has lasted for 12 continuous months."  R. at 17.  I recognize that

a GAF score in some instances may represent only snapshot of a claimant's degree of symptoms

and functional difficulties.  Jackson v. Astrue, No. CV 09-989-MO, 2011 WL 65081, at *3 (D.

Or. 2011) (stating claimant's GAF score applied to claimant's "current level of function, and did

not purport to describe [claimant's] level of functioning at any other time, much less over the full

period for which she claims disability"); Ray v. Astrue, No. ED CV 08-0523 PJW, 2009 WL

3162199, at *3 (C.D. Cal. 2009) ("GAF scores are a snapshot of a patient's then-current

functioning.").  However, the simple fact that a GAF score may in certain circumstances reflect a

claimant's current level of functioning at the time of the examination does not amount to a

specific and legitimate reason, let alone a clear and convincing to discount Dr. Miller's medical

opinion in this instance.

## IV.  The ALJ's RFC Determination

 Plaintiff asserts the ALJ's RFC determination is contrary to SSR 96-8p and is

unsupported by substantial evidence.  In assessing a claimant's RFC, the ALJ must consider all

allegations of physical and mental limitations or restrictions, even those that are not "severe," and

---

[2](...continued)
shoplifting) or any serious impairment in social, occupational, or school functioning (e .g., no
friends, unable to keep a job).  See Id.

must consider the claimant's ability to meet physical, mental, sensory, and certain other requirements of work. See 20 C.F.R. §§ 404.1545(a)(2), (a)(4); SSR 96-8p.

As noted above, the ALJ failed to address the limitations documented by Nurse Monroe. Medical practitioners such as nurse practitioners are considered "other sources" for the purposes of social security. See 20 C.F.R. § 416.1513(a). An ALJ must consider all relevant evidence in a claimant's case record, including opinions from "other sources." 20 C.F.R. § 416.913(d)(1). Thus, the ALJ was required to consider Nurse Monroe's medical opinion and could reject it for "germane" reasons. E.g., Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, Nurse Monroe examined Plaintiff on March 10, 2006. R. at 215. She expressly "instructed [Plaintiff] to keep her leg elevated when sitting at work or at home" and "limit[ed] Plaintiff to] sitting for 1 hour at a time and standing for 30 minutes or less." Id.

The Commissioner contends the ALJ's failure in not discussing the opinion of Nurse Monroe was harmless error and that Nurse Monroe's stated limitations were based only on Plaintiff's subjective statements and were not documented in any of her medical notes. The Commissioner's post hoc rationalizations are insufficient to cure the ALJ's errors because the ALJ, not the Commissioner, must provide the reasons germane to each "other source." See, e.g., Ceguerra v. Sec'y of Health & Human Serv., 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."). In addition, the ALJ's error was not harmless because I cannot conclude that "no reasonable ALJ," when fully crediting Nurse Monroe's opinion, "could have reached a different disability determination." Stout, 454 F.3d at 1056.

/ / /

15 - OPINION AND ORDER

**V. Remand**

I turn next to whether this case should be remanded for an immediate award of benefits or remanded for further proceedings. This decision is within the court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. <u>Id.</u> at 1179. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. <u>Id.</u>

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "'(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.'" <u>Id.</u> at 1178 (citation omitted). Here, the ALJ erred by improperly discounting the lay witness statements, by giving Dr. Miller's medical opinion less than full weight, and by failing to consider the opinions of Nurse Monroe. Nurse Monroe examined Plaintiff and instructed her "to keep her leg elevated when sitting at work or at home" and limited her to "sitting for 1 hour at a time and standing for 30 minutes or less." R. at 215. The VE testified that requiring Plaintiff to elevate her leg and limiting her to sitting for only one-hour at a time and standing for thirty minutes or less precluded sustainable competitive employment. <u>See</u> R. at 66. In addition, the Questionnaire completed by Plaintiff's former employer stated Plaintiff was only 70% as productive as other employees. R. at 124. The VE explicitly testified that being only 70% as productive as other employees precluded Plaintiff from all competitive employment. R. at 66. Credited as true, the improperly omitted evidence demonstrates Plaintiff is unable to maintain gainful employment. Accordingly, a

reversal and remand for an immediate calculation and award of benefits is proper.[3] See Lester, 81 F.3d at 834 (stating that if improperly rejected evidence demonstrates a claimant is disabled, remand for payment of benefits is proper).

<strong>CONCLUSION</strong>

For the foregoing reasons, this court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

Dated this 28th day of September, 2011.


/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

---

[3] Having so concluded, I decline to address Plaintiff's remaining argument that the ALJ erred by accepting the VE's testimony regarding the number of jobs in the national economy.